UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JEANETTE ARMBRUSTER,

        Plaintiff,

                                      Case Number 07-14658-BC
v.                                      Honorable Thomas L. Ludington

CHARTER COMMUNICATIONS, LLC,

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On July 31, 2007, Plaintiff Jeanette Armbruster ("Plaintiff") filed a complaint against Defendant Charter Communications, L.L.C., ("Defendant"), alleging age and gender discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, Michigan's Elliot Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §§ 37.2101, *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*. After removing the case to this Court, Defendant moved for summary judgment under Federal Rule of Civil Procedure 56.

Defendant presents two arguments in support of summary judgment. First, Defendant asserts that Plaintiff's federal causes of action are barred because her complaint filed with the Equal Employment Opportunity Commission ("EEOC") did not allege age or gender discrimination; thus, Plaintiff did not exhaust her administrative remedies prior to filing suit. Second, Defendant asserts that it had a legitimate justification for terminating Plaintiff and that Plaintiff is unable to establish that its justification is a pretext for its illegal discrimination.

On December 10, 2008, the Court heard oral argument. The Court will grant in part and

deny in part Defendant's motion for summary judgment. First, Plaintiff advanced allegations of age discrimination in an EEOC "intake questionnaire" that constitute an exhaustion of administrative remedies. In contrast, her claim of gender discrimination under Title VII was not raised before the EEOC and is procedurally defaulted. Second, Plaintiff has satisfied her burden in demonstrating a factual issue regarding pretext, rebutting Defendant's legitimate non-discriminatory justification for the termination of her employment.

I

From 1991, Plaintiff served as an advertising account executive ("salesperson") in Defendant's Saginaw, Michigan office.[1] According to Defendant, it terminated Plaintiff's employment for not meeting sales expectations in 2005, after four years of falling short of the annual quotas beginning in 2001. Plaintiff, born in 1955, contends that she was discharged because of her age and her gender. Defendant disputes this assertion.

Defendant provides broadband internet and television services to more than six million customers in thirty states. Defendant employs a team of salespersons to sell commercial time to local businesses to air on Defendant's cable television channels.

According to Defendant's local sales manager and Plaintiff's superior, Jason Yatch ("Yatch"), Defendant establishes an annual quota for its Saginaw sales team – collectively and individually. *Yatch Decl.*; dkt. # 22 at ¶¶ 8-10. Yatch annually raises the advertising sales quota, expecting the team to increase sales by ten percent. *Id.* Yatch does not implement a uniform ten percent increase on each salesperson. *Id.* Rather, Yatch increases expectations relative to the

---

[1] From 1991 to 1999, Plaintiff was employed by Defendant's predecessor, Bresnan Communications, which Defendant acquired in 1999. The record also demonstrates that Plaintiff resigned her position in 1999 with Defendant and was employed by another company for a short period. Plaintiff returned to her previous position with Defendant, at the request of the Saginaw sales team manager. Defendant employed Plaintiff until her discharge in 2005.

salesperson's experience and performance in the previous year. *Id.* Consequently, an experienced salesperson that met one's prior year goals may be expected to increase sales by more than ten percent and an inexperienced salesperson that fell short of one's goal may only be expected to increase sales moderately. *Id.*

Defendant emphasizes that Plaintiff did not meet her annual quotas in 2001, 2002, 2003, 2004, and 2005. In 2001, Plaintiff did not meet her assigned goal. Dkt. # 23 at 9,10. Defendant acknowledges, however, that Plaintiff would likely have met her 2001 quota but for the fact that she took six weeks of sick leave. *Id.* at 9, 10, 41. In 2002, Plaintiff sold $358,290 of advertising, meeting ninety-six percent of her 2002 target. *Id.* at 11, 45. Plaintiff achieved ninety-four percent of her 2003 quota by selling $350,604 of advertising. *Id.* at 11, 47. From 2001 to 2003, her annual quota remained relatively stable, beginning at $372,000 and raising only to $375,000.

After missing her target in 2003, Yatch informed Plaintiff that her primary objective in 2004 was to satisfy her quota. *Id.* Plaintiff acknowledges that Yatch provided assistance and guidance to her. Specifically, Yatch indicated to Plaintiff that it looked likely that one of her largest clients, Labadie Auto Group ("Labadie"), could considerably reduce the amount of services purchased. *Id.* at 11,12. Consequently, Yatch recommended that Plaintiff cultivate another significant client. *Id.* at 11,12, 49. She did not do so, and Labadie decreased its advertising from $100,000 in 2003 to $46,000 in 2004. *Id.* In 2004, Plaintiff only achieved eighty-seven percent of her 2004 goal. Plaintiff exceeded her prior years performance in gross dollars, as she sold $378,677 of advertising. Her target for 2004 was $436,000, a sixteen percent increase over her 2003 quota.

A performance review of Plaintiff indicated that "Mak[ing] Budget" was her primary goal in 2005, with a secondary goal of finding a replacement client for Labadie. *Id.* at 51. Yatch also

decreased Plaintiff's annual quota to $405,000, a decrease of approximately seven percent. Dkt. #

22 at ¶ 13. Yatch provided the following commentary:

> [Plaintiff] continues to be a mystery to me? [sic] At times she can be a solid rep who performs at a high level, whether it's a promotion, annual selling and/or customer service. Then at time, [Yatch] question[s] whether she wants to be a part of [Defendant's sales] team. [Plaintiff's] not making the calls, servicing clients or even coming to work. [Yatch] need[s] a solid year of focus from [Plaintiff] in 2005. [Yatch] need[s] [Plaintiff] to perform at a high level the entire year and achieve her yearly revenue goal. [Plaintiff] needs a breakout year in 2005.
>
> * * *
>
> [Plaintiff] failed to achieve any of our Mutual Goals in 2004. [Plaintiff] failed to make her yearly budget, find an account with Labadie's spending potential and improve on with [professional selling skills]. She needs to improve all 3 areas in 2005.

Dkt. # 23 at 51.

The record indicates that Plaintiff's sales performance did not improve during the first half of 2005. Yatch then provided Plaintiff a "performance improvement plan," indicating that Plaintiff had not met eighty-five percent of her monthly goals in February, March, or April of 2005. *Id.* at 56. The plan required Plaintiff to contact a specific amount of customers and established minimum sales goals. *Id.*

On August 21, 2005, after meeting with Plaintiff to discuss performance issues, Yatch authored a memorandum to Plaintiff that provided as follows:

### Written warning for improved performance.

> This letter is to inform you that certain areas of your performance need to improve, for you to have continued employment.
>
> Over the last 6 months the following has occurred:
>
> > **Failure to Achieve Sales Performance Guidelines**. During the last 6 broadcast months in 2005, you have failed to reach the monthly

> minimum requirement of 85% in the months: February 2005 (68%), March 2005 (73%), April 2005 (83%), June 2005 (48%), and *July 2005 (74%). According to the "Standards of Success Guidelines" that you signed in January of 2005, [a salesperson] cannot perform below 85% for 3 months in a 6-month period. As already mentioned – you have had 5 months below 85%.

*Id.* at 57. The memorandum also reiterated the requirement to contact customers and required Plaintiff to fulfill eighty-five percent of her goal during a thirty day "probation period." *Id.*

Plaintiff acknowledges that she did not meet her monthly goals in June or July of 2005, but contends that Yatch sabotaged her by not approving a potential $30,000 contract ("Labadie Contract") with Labadie Auto Group ("Labadie"). Yatch testified that he rejected the Labadie Contract because the terms of the contract – length and rate – were unacceptable when contrasted against previous contracts with Labadie. Dkt. # 28-4 at 12, 14. Plaintiff emphasizes that she would have reached her June and July targets if Yatch had approved the Labadie Contract. Yatch agreed that Plaintiff would have met her goals. *Id.* at 13. Further, Plaintiff contends that Defendant would not have had a legitimate justification to issue the August 21 warning for improved performance.

Plaintiff also alleges that Yatch permitted other salespersons to poach her "protected accounts." Under Defendant's sales system, a salesperson that sold advertising to a customer in the preceding twelve months retained an exclusive right to solicit that customer. *Id.* at 10. Similarly, a salesperson that establishes a customer relationship, without making a sale, may designate the customer as a "prospective account," which establishes the salesperson's sole right to solicit the customer for three to six months. *Id.* Plaintiff testified that Yatch permitted Smith and McTaggart to solicit sales from customers that should have been protected. Dkt. # 28-2 at 9-10.

On September 30, 2005, Yatch met with Plaintiff to discuss her previous goals and authored a second memorandum documenting Plaintiff's performance. *Id.* at 59. This "second written

warning for improved performance" indicated that while Plaintiff had contacted a sufficient number of customers, she remained below the eighty-five percent threshold. *Id.* The memorandum indicated that Plaintiff needed to reach the eighty-five percent threshold over the next fifteen days, or Defendant would discharge her employment. *Id.*

Plaintiff contends that she met the eighty-five percent requirement, but that Defendant miscalculated her figures. *See* dkt. # 28-21. Defendant, on the other hand, contends that Plaintiff fell short of the goal because Plaintiff had not consummated certain sales by the October 14 deadline.

On October 14, 2005, Yatch drafted a third memorandum concerning Plaintiff's employment performance. *Id.* at 61-62. While reiterating many of the issues raised in the previous memoranda, Yatch set forth specific conditions for Plaintiff to retain her position. *Id.* It indicated that Plaintiff must meet ninety percent of her fourth quarter budget and arranged $50,000 of sales for 2006 by November 11, 2005. *Id.* Defendant concluded that Plaintiff did not meet either goal. Plaintiff "resigned"[2] from her position on November 11, 2005. *Id.* at 63. Defendant's "employment separation form" indicated that Plaintiff's "poor [sales] performance" was the reason for the "voluntary" separation. *Id.* at 65. On that form, Plaintiff indicated that she would have satisfied the $50,000 requirement for 2006, but Defendant fired her a day before the contracts would be executed. *Id.* at 66.

Indeed, Plaintiff continues to dispute this allegation, contending that she would have met the goals but Defendant prematurely evaluated her performance. The October 14, 2005 memorandum provides that Plaintiff would have "30 days" to satisfy her goals, but that the parties would meet on

---

[2] While Plaintiff signed a voluntary separation statement, she added the commend that she did "not agree with the decision to let [her] go." Dkt. # 23 at 63.

November 11, 2005 at 8:30 a.m. to "discuss" her performance. *Id.* at 61-62. Plaintiff asserts that she would have completed her goals within thirty days (November 14, 2005).

Plaintiff contends that her sales performance was similar to Brice Smith, a thirty-two year old, male salesperson. In 2005, Smith finished below eighty-five percent in four of the final five months of 2005. Dkt. # 28-15 at 8. Smith surpassed the eighty-five percent threshold in each of the first seven months, including two months where he exceeded one-hundred percent of his quota. *Id.* In the two proceeding years, Smith surpassed his annual sales quotas, achieving 133 percent of his 2003 goal and 115 percent of his 2004 goal. Dkt. # 37 at 9-10. In 2004, Smith's quota was approximately $20,000 less than Plaintiff's quota, but surpassed her by more than $100,000 in total sales. *Id.* After Plaintiff's employment was terminated, Smith received the Labadie account. Dkt. # 28-4 at 12-13. Plaintiff also alleges that her annual sales figures are comparable or exceed other salespersons during the period between 2001 and her dismissal.

On April 18, 2006, Plaintiff contacted the EEOC to lodge a complaint. *Intake Questionnaire*; dkt. # 28-32. Plaintiff completed an EEOC "intake questionnaire." The first question inquired into the reason for the claim of employment discrimination. The questionnaire instructed that if the complainant "feel[s] the discrimination was due to multiple reasons, such as race and age, [the complainant] should check (✓) **both RACE and AGE**." *Id.* at 3 (emphasis in original). Plaintiff placed checks next to "Age" and "Retaliation." *Id.* She did not place a check next to "Sex" or any other category, including "Other (Specify)." *Id.* Plaintiff described the following events as the basis of her termination:

> A) Date *July 05*     Action *$30,000 buy turned down, yet I was written up for not being at my budget.*
> Person(s) responsible     *Jason Yatch*

-7-

> B) Date *May 05*        Action *Asked to lift up my shirt at a video shoot for our company summit.*
> Person(s) responsible        *Greg Walton*
>
> C) Date *11/14/05*        Action *They said terminated for not being on my numbers* ~~*budget from*~~ *the write up. And I was, and I have proof* [illegible] *Age and retaliation.*
> Person(s) responsible        *Greg Bryant*

*Id.* (emphasis connotes handwritten response). Plaintiff also alleged that "[e]*very other younger employee who also were at these numbers were not fired. Another female who was closer in age to* [sic] *had not complained about civil rights violations before.*" *Id.* at 4 (emphasis connotes handwritten response); *see also id.* at 8. Plaintiff requested reinstatement of her employment and fringe benefits, back pay, and "distress damages." *Id.*

On July 12, 2006, the EEOC issued a formal charge of discrimination. *EEOC Charge*; dkt. # 21-2 at 2. The form contained a section for the complainant to specify the type of discrimination. *Id.* Plaintiff marked the box next to "retaliation," but did not mark either of the boxes next to sex or age. *Id.* Plaintiff provided the following description of Defendant's conduct:

> [Plaintiff] began employment with [Defendant] in 1999, and was last employed as an Account Executive.
>
> [In 2005], [Plaintiff] complained to management and Human Resources about inappropriate sexual behavior between management and employees affecting the workplace.
>
> Shortly thereafter, on November 14, 2005, [Plaintiff] was terminated for not meeting the "number." [Plaintiff] needed to.
>
> [Plaintiff] believe[s] [she] was discharged in retaliation for reporting sexual-related behavior in the workplace, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* In her deposition, Plaintiff acknowledged that EEOC charge did not indicate age or gender discrimination. Dkt. # 23 at 30. Plaintiff indicated that she did not allege "sex" discrimination

because she interpreted that to mean sexual harassment. *Id.* At the time that Plaintiff signed the charge, however, she did not believe that she had suffered from age or gender discrimination because she yet to belief either factored into the decision. *Id.* at 31.

II

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

III

Defendant presents two arguments in support of summary judgment. First, Plaintiff's federal claims are procedurally barred because the EEOC charge did not identify either gender or age discrimination that would authorize a claim under Title VII or the ADEA. Second, Plaintiff can not establish pretext because Defendant's proffered reason is grounded in fact, was sufficient to warrant

the termination of her employment, and was indeed a factor in the decision. Plaintiff disputes these arguments.

A

A plaintiff must file a claim for the violation of the ADEA or Title VII with the EEOC within 300 days of the discriminatory conduct. 29 U.S.C. § 626(d)(2); 42 U.S.C. § 2000e-5(e)(1). "A person seeking to bring a claim under Title VII in federal court must first exhaust her administrative remedies." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006) (citation omitted). Charges of discrimination by the EEOC should not be strictly construed such that later complaints before a federal court would be restricted "on procedural technicalities." *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992); *see also Randolph*, 453 F.3d at 731-32. Thus, the charge is to be "liberally construed to encompass all charges reasonably expected to grow out of the charge of discrimination." *Id.* at 676 (citation and quotations omitted).

In *Randolph*, the Sixth Circuit concluded that evidence supporting a plaintiff's discriminatory claims that predated dates indicated on the EEOC charge were not procedurally defaulted for failure to exhaust. 453 F.3d at 732. The court reasoned that the plaintiff was not advancing a previously omitted claim in federal court, rather a single claim of "escalating progression of harassment" not to be "bound[] by discrete temporal boundaries." *Id.*; *see also Deters v. Rock-Tenn Co., Inc.*, 245 F.App'x 516, 527-28 (6th Cir. 2007) (unreported) (EEOC charge that did not allege constructive discharge claim not barred because charge filed before resignation and foreseeable to employer from allegations); *see also Blume v. Potter*, 289 F.App'x 99, 102-03 (6th Cir. 2008) (unreported) (EEOC charge that did not explicitly allege disability discrimination not defaulted when plaintiff checked the box next to disability discrimination, indicated disability

was "mental-psychiatric," and asserted his theory in an affidavit).

In contrast, the Sixth Circuit has held that related claims not raised in the EEOC charge to be procedurally defaulted. *See Halfacre v. Home Depot, U.S.A., Inc.*, 221 F.App'x 424, 427-28 (6th Cir. 2007) (unreported) (allegations by plaintiff concerning allegedly discriminatory conduct at earlier time defaulted because not "reasonably expected to grow out of the charge of discrimination"); *see also Scott v. Eastman Chem. Co*., 275 F.App'x 466, 473 (6th Cir. 2008) (unreported) (alternative claims dismissed because the plaintiff did not inform the EEOC and it was "not reasonable to expect that the EEOC would investigate other [allegations of discrimination] that were not put in front of them").

In a recent unreported case, the Sixth Circuit concluded that one of the plaintiff's claims not to be exhausted on the following facts:

> [The plaintiff] filed discrimination claims with the EEOC and [a state civil rights agency] charging that Defendant discriminated against him on the basis of sex, age, and disability by denying him a promotion and refusing to provide him with a parking space. *The form* [*the plaintiff*] *used to file suit specifically contains a box a complainant must check to indicate a retaliation claim, but the plaintiff did not complete this section of the form.* Therefore, the plaintiff failed to satisfy one of the administrative prerequisites for bringing his retaliation claims, namely filing a charge of retaliation with the EEOC in a timely fashion.

*Brown v. City of Cleveland*, 2008 WL 4372950, *7 (6th Cir. September 23, 2008) (unreported) (emphasis added). While mindful of the liberal construction an EEOC charge requires, the court noted that the plaintiff did not indicate how the allegations of failure to promote or provide handicapped parking, identified in the EEOC charge, would prompt investigation of a retaliation claim. *Id.* Consequently, the court concluded that the plaintiff had not exhausted his administrative remedies with respect to a claim for retaliation. *Id.*

Indeed, Plaintiff's response brief acknowledges that the EEOC charge only identified

retaliation as the basis for the discriminatory conduct. Dkt. # 27 at 17. Plaintiff argues, however, that she did allege age discrimination in the field questionnaire, which is sufficient to exhaust her remedies for the purpose of 29 U.S.C. § 626(d)(2). *Id.* at 18 (citing *Fed. Exp. Corp. v. Holowecki*, 128 S.Ct. 1147 (2008). In *Holowecki*, the Supreme Court found reasonable the EEOC's interpretation of "charge," as contemplated in 29 U.S.C. § 626(d), to be a filing that "reasonably can be construed to request agency action and appropriate relief on the employee's behalf." 128 S. Ct. at 1159, 170 L. Ed. 2d 10, 24. Defendant's reply brief distinguishes the instant facts from *Holowecki* by asserting that Plaintiff's intake questionnaire did not "request [the EEOC] to take remedial action." Dkt. # 33 at 2. While the Supreme Court noted that the EEOC "is not required to treat every completed intake questionnaire as a charge," *id.*, Plaintiff's request for reinstatement and back pay demonstrates that she sought the EEOC to take action. Thus, Plaintiff's intake questionnaire sufficiently advanced allegations of age discrimination and requested relief such that she can advance her ADEA claim. In contrast, Plaintiff did not advance her gender discrimination claim and it was procedurally defaulted. Plaintiff does not refute this.

B

The ADEA, at 29 U.S.C. § 623(a)(1), provides, "It shall be unlawful for an employer . . .to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." Age discrimination cases follow the familiar framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as employed in Title VII cases. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). Thus, a plaintiff may rely on direct or circumstantial evidence to demonstrate an ADEA claim. *See Johnson v. Univ. of Cincinnati*, 215

F.3d 561, 572 (6th Cir. 2000).

If a plaintiff presents direct evidence of discrimination, then a court need not employ the *McDonnell-Douglas* framework, because the direct evidence eliminates the need for that inferential demonstration of discrimination. *See Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985) (citations omitted). Here, Plaintiff has not advanced direct evidence of discrimination and the burden-shifting analysis of *McDonnell-Douglas* applies. *Johnson*, 215 F.3d at 573. A plaintiff may establish a claim for discrimination through indirect evidence "sufficient to create a reasonable inference that age was a determining factor in the employment decision." 1 Hon. Charles R. Rickey, Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts § 3:100 (2d ed. 2008) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308 (1996)). To demonstrate a *prima facie* case for age discrimination, a plaintiff must demonstrate: (1) that she is a member of a protected class (i.e. over the age of forty); (2) that she is qualified to perform the job; (3) that she was subject to an adverse employment action; and (4) that the employer replaced her with a younger individual. *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007). "In age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Grosjean*, 349 F.3d at 335 (citations omitted). "The fourth element may be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Tuttle*, 474 F.3d at 317 (quoting *Coomer v. Bethesda Hosp. Inc.*, 370 F.3d 499, 511 (6th Cir. 2004) (quotation omitted)).

Once a plaintiff establishes a *prima facie* case, then the defendant may respond by offering a legitimate, non-discriminatory reason for its employment action. *Grosjean*, 349 F.3d at 335

(citation omitted). Then a plaintiff may rebut a defendant by demonstrating that the defendant's offered reason was only pretext. *Id.* (citation omitted).

It is undisputed that Plaintiff can establish a prima facie of indirect discrimination. *See* dkt. # 21 at 18. The record demonstrates that Plaintiff was in the protected class (in excess of forty years of age), qualified for her sales person position (demonstrated by satisfactory prior service), suffered adverse employment action (termination of employment on November 11, 2005), and that other salespersons that consistently did not meet there quotas retained their positions. Likewise, the record supports Plaintiff's proffered legitimate justification – namely, that Defendant terminated her position for poor sales performance. Plaintiff does not dispute that Defendant met its burden of production.

Thus, the burden returns to Plaintiff to "demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation." *Inwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) (citation omitted). "To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the] discharge, or (3) that they were insufficient to motivate discharge." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 471 (6th Cir. 2002) (citations omitted). The first and third methods are "direct attacks on the credibility of the employer's proffered motivation and, if shown, provide an evidentiary basis for what the Supreme Court has termed 'a suspicion of mendacity.' " *Hedrick v. West. Res. Care Sys*, 355 F.3d 444, 460 (6th Cir. 2004) (quoting *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

While Plaintiff's response brief advances overlapping arguments concerning pretext, Plaintiff ultimately disputes that Defendant's proffered justification was grounded in fact. Plaintiff's primary argument is that she either met or would have met the goals in each of the performance memorandum except that Yatch manipulated the requirements and enforced arbitrary deadlines with the intent of hindering Plaintiff's ability to meet her goals. Plaintiff's argument, made clear at oral argument, is that Yatch acted arbitrarily by creating minimum performance requirements that Plaintiff would not meet. Plaintiff proffered evidence that had Yatch approved the Labadie Contract, it would have satisfied her goals and removed her from probationary review. While Defendant asserts that the terms of the Labadie Contract were grossly inadequate to accept, that contention is an issue of fact.

Consequently, Plaintiff remained on probation and Defendant issued a second memorandum concerning Plaintiff's performance. Again, Defendant contends that Plaintiff did not satisfy the goals set forth in the second memorandum. Plaintiff disputes this assertion by presenting evidence that she surpassed the eighty-five percent threshold. In response, Defendant argues that Plaintiff did not consummate those sales until after the deadline passed. Likewise, this dispute is an issue of fact for a jury to determine.

Thereafter, Defendant issued the third and final memorandum setting additional sales goals, which Defendant alleges Plaintiff did not meet. Just as before, Plaintiff has raised a factual dispute about whether Defendant's decision is grounded in fact. Plaintiff testified that she again would have satisfied the goals, but that Defendant manipulated her results by reducing the amount of time to accomplish the assigned tasks. A factual dispute remains.

From the record advanced by Plaintiff, a jury could infer that Plaintiff may have satisfied

goals set forth in the first memorandum, except that Defendant impeded her ability to so. Likewise, a jury could also infer that Plaintiff did, as a matter of fact, satisfy the requirements of the second memorandum, but that Defendant refused to acknowledge that she had done so. Lastly, the record can support the inference that Defendant enforced an overly stringent deadline to ensure that Plaintiff did not satisfy the final set of goals. Thus, summary judgment will be denied with respect to Plaintiff's ADEA and ELCRA claims.

IV

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [Dkt. # 21] is **GRANTED** in part and **DENIED** in part. Plaintiff's Title VII claim is **DISMISSED WITH PREJUDICE**.

                                                s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge

Dated: December 23, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 23, 2008

                                  s/Tracy A. Jacobs
                                  TRACY A. JACOBS